CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)
*Attorney for Plaintiff*

HAMRICK & EVANS LLP

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| CRIMINAL PRODUCTIONS, INC., a Nevada corporation, | Case No.: 2:16-cv-01968-RFB-CWH |
| Plaintiff, | |
| vs. | |
| DANIEL ANDERSON, an individual; MORTON CAMPBELL, an individual; KELLI HOFFMAN, an individual; TEGAN LEWIS, an individual; ZOE SEPHOS, an individual; DERRICK SULLIVAN, an individual; ANASTACIOS THEOLOGITIS, an individual; KENNY YANG, an individual; and JOHN AND JANE DOES. | |
| Defendants | |

### PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO SERVE THE REMAINING UN-SERVED DEFENDANTS

**COMES NOW,** Plaintiff CRIMINAL PRODUCTIONS, INC. ("PLAINTIFF"), by and through its counsel, Charles Rainey, Esq. of HAMRICK & EVANS LLP, and hereby moves this court for an extension of time to serve those Defendants herein that have yet to be served.   This motion is based upon the memorandum of points

and authorities attached hereto, the pleadings and papers on file, and any arguments to be had at any hearing of this matter, if the court so requires any hearing.

*Respectfully submitted March 19, 2017.*

HAMRICK & EVANS LLP

/s/ Charles C. Rainey

CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
crainey@hamricklaw.com
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
*Attorney for Plaintiff*

HAMRICK & EVANS LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff respectfully requests that the Court grant it an extension of ninety (90) days to serve the remaining un-served Defendants in the present case. As demonstrated below, good cause exists for the extension of the deadline to serve the Defendants herein. Each of the remaining un-served defendants should be well aware of the present case, having received multiple notices of the present action. None of the Defendants would suffer any undue prejudice as a result of this Court's extension of the deadline for service. Meanwhile, a dismissal of any one or more of the Defendants would unduly prejudice the Plaintiff.

When this case was first filed, the Plaintiff only knew the Defendants by their respective IP addresses. Only after filing this action and moving the court for the right to conduct limited discovery, was the Plaintiff finally able to learn the Defendants' true identities. Then, upon learning the true identities of the Defendants, the Plaintiff attempted in earnest to provide each Defendant with ample opportunity to resolve this matter without the need for further litigation. In a typical case, this negotiation and fact-finding process would have occurred prior to the case's filing. However, due to the logistics of Internet piracy cases, such as the one at hand, this negotiation and investigative process must occur AFTER the case is filed and often continue beyond the filing of the amended complaint and even beyond the service deadlines.

Plaintiff has diligently pursued its rights in this case. However, the time limitations imposed by FRCP 4(m) are unfortunately too narrow to: (i) allow the Plaintiff sufficient time to satisfy all applicable legal requirements related to its action, (ii) afford the Defendants reasonable time to resolve the pending dispute, and also (iii) timely serve the Defendants with the amended complaint. As such, Plaintiff contends good cause exists to extend the deadline for service in this matter.

HAMRICK & EVANS LLP

## II. FACTUAL BACKGROUND

Plaintiff filed the present action on August 18, 2016.  At that time, Plaintiff only knew the Defendants by their IP Addresses.  Accordingly, on the same day the Plaintiff filed its Complaint, Plaintiff immediately moved *ex parte* to open discovery for the limited purpose of identifying each of the Defendants by their true names.  The Court granted the Plaintiff's *ex parte* motion on August 23, 2016.  Then, pursuant to this Court's order, Plaintiff immediately, within 24 hours of receiving the Court's order, served a subpoena upon the Defendants' Internet Service Provider, seeking the names and addresses of the individual Internet subscribers responsible for the subject IP Addresses.

On September 30, 2016, the Defendants' ISP provided Plaintiff's counsel with the names and addresses of the individual subscribers for each account associated with the Defendant IP Addresses.   Plaintiff promptly dispatched a demand letter to each and every individual Internet subscriber, affording each the opportunity to settle the present case prior to being individually named as Defendants in an amended complaint.  In the original demand letter, the Plaintiff included a copy of the filed complaint and expressly imposed upon each Defendant a responsive deadline of two weeks.  For those Defendants who failed to timely respond to the first demand letter, the Plaintiff issued a second demand letter, again affording each Defendant an additional two weeks to respond.

On November 21, 2016, only after several Defendants had ignored the multiple demands and others had outright refused to make any attempt at a settlement, the Plaintiff amended the complaint on file to identify each Defendant by name.  Within one week after filing the amended complaint, the Plaintiff issued yet another round of letters to the Defendants, this time including a copy of the amended complaint.   The Plaintiff also promptly ordered its process server, AM:PM Legal Solutions, to effectuate personal service upon each of the named defendants.

HAMRICK & EVANS LLP

In the ensuing weeks, the Plaintiff engaged in further negotiations with certain Defendants, in some cases settling its claims with such Defendants and dismissing those Defendants from the action.   In other instances, the Plaintiff elected to dismiss Defendants it determined to be no longer residing at the subject residence or who were otherwise not servable.

As of the date of the present motion, each of the remaining un-served Defendants has received multiple notices of the present action, should be fully aware of the present action, and is likely evading service.

## III.   ARGUMENT

Plaintiff should be afforded additional time to serve the Defendants in the present case, because good cause exists to extend the service deadline.   Each of the remaining un-served Defendants is aware of the present action. Meanwhile, there is no risk that extending the deadline would prejudice any of the Defendants. Furthermore, any dismissal of the un-served defendants would unduly prejudice the Plaintiff.

Rule 4 of the Federal Rules of Civil Procedure governs service of process in a civil action. See generally, Fed. R. Civ. P. 4. Subpart (m) of the rule sets forth the time period during which service must occur. Id.   The relevant portion states the following:

> **Time Limit for Service.** If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). (Emphasis added.)

Rule 4(m) requires a two-step analysis in deciding whether to extend the time for service of the summons and complaint. *In re Sheehan*, 235 F.3d 507, 512 (9th Cir. 2001). First, upon a showing of good cause, the court must extend the time period. *Id.* Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period. *Id.* "[A]t a minimum, 'good cause'

HAMRICK & EVANS LLP

means excusable neglect." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). *In Boudette*, the Ninth Circuit stated a plaintiff may be required to show the following factors in order to bring the excuse to the level of good cause: "(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Id.* (citing *Hart v. United States*, 817 F.2d 78, 80-81 (9th Cir. 1987)). The Ninth Circuit has not articulated specific factors for a district court to apply when exercising its discretion in the absence of a showing of good cause. *In re Sheehan*, 253 F. 3d at 512. However, the court's discretion is broad. *Id.*

The facts of the present case satisfy each element for a finding of good cause to extend the service deadline.   First, each of the un-served Defendants has received multiple notices of the pending action.   Prior to the case even being filed, each Defendant would have received an email warning from its ISP, notifying each Defendant of the copyright infringement occurring over their respective Internet connections.  Then, shortly after the filing of the present action, upon submission of the Plaintiff's subpoena to the Defendant's ISP, each Defendant would have received from its respective ISP a written notice of the pending subpoena.  Then, immediately after the Plaintiff's receipt of the subpoena response, the Plaintiff served a demand letter upon each of the Defendants.   When first demand letter was ignored, the Defendant served a second demand letter upon each of the Defendants.   Subsequently, after the present case was amended to identify each of the Defendants by name, the Plaintiff sent yet another letter to each of the Defendants, this time providing each with a copy of the amended complaint.

After affording each Defendant ample opportunity to resolve the pending dispute, the Plaintiff ordered its process server, AM:PM Legal Solutions, to effectuate personal service upon each of the Defendants.  While Plaintiff's process server successfully effectuated service on some Defendants in the present case, it was not able to effectuate service on all Defendants.   For those Defendants the

HAMRICK & EVANS LLP

Process Server was unable to serve, the Plaintiff assessed whether the individual Defendant was still residing at the subject residence.  In cases where the Plaintiff's counsel had reason to believe the Defendant had moved away from the service address, the Plaintiff dismissed the Defendant from the present action.   This created a circumstance where the only un-served Defendants were those individuals residing at the same address where they would have received at least four (4) notices of the pending litigation, along with multiple other warnings of copyright infringement occurring at their address.

Secondly, extending the deadline for service poses no risk of prejudice upon the Defendants.   In fact, the lengthy notice process that caused the Plaintiff to run up against the service deadline is designed to alleviate any prejudice to the Defendants and afford each of them ample opportunity to either (i) settle the pending claims without litigation; or (ii) identify and retain counsel to reasonably dispute the pending claims.

Finally, if the Court were to dismiss the present action, forcing the Plaintiff to re-file its case, the Plaintiff would suffer undue prejudice.    Internet piracy cases, such as the one at hand, are administratively burdensome to begin with. Meanwhile, the data we rely upon in proving these cases is often maintained for a finite period of time.   In many ways, these cases are a race against the clock. Each day that passes, gives the infringer more opportunity to cover its digital tracks.    In light of the foregoing, if the Court were to dismiss the un-served Defendants from the present action "without prejudice," it is unlikely the Plaintiff would find it feasible to re-file its case against those Defendants. Consequently, even if a Defendant is dismissed "without prejudice," the practical effect is the Plaintiff loses the ability to pursue its claim any further.

Meanwhile, our District is confronted with a crisis of copyright infringement. Nevada is ranked among the worst offenders for Internet piracy.[1]  Every day,

HAMRICK & EVANS LLP

---

[1] *See* http://www.movoto.com/blog/novelty-real-estate/torrenting-us-state/ (notes Nevada is among the worst states for bitorrent usage, with particular emphasis on the peer-to-peer downloads of movies).

7

thousands of copyright infringements occur over our State's Internet connections. The practice has become so commonplace that we have developed a culture of theft – a culture where pirating downloads of copyrighted material is widely accepted. This culture of piracy threatens some of the core principals of our Nation's founding and success.   Indeed, our founding fathers held the protection of copyrights to be so important that they specifically wrote it into our Constitution. *See* U.S. Const., Art 1, §8(8).   Meanwhile, many economists and other scholars correlate the growth and strength of our Nation's economy in the past century to our strong system of intellectual property rights.[2]   These cases are essential to preserving the rights of copyright-holders and reversing the unsettling trend of widespread Internet piracy.

## IV.   CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court extend the deadline to serve the Defendants herein by an additional ninety (90) days.

Respectfully submitted this March 19, 2017.

IT IS SO ORDERED.

DATED:  March 21, 2017

_____
C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE

/s/ Charles C. Rainey
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
crainey@hamricklaw.com
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)
*Attorney for Plaintiff*

HAMRICK & EVANS LLP

---

[2] *See e.g.,* Walter G. Park, et al., "Intellectual Property Rights and Economic Growth," Contemporary Economic Policy, Vol. 15, Issue 3, pp. 51-61 (1997).